O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ENEIDA PEREZ ARGUETA,               )   NO. SACV 11-1498-MAN
                                    )
              Plaintiff,            )
                                    )   MEMORANDUM OPINION
         v.                         )
                                    )   AND ORDER
CAROLYN W. COLVIN,[1]               )
Acting Commissioner of Social       )
Security,                           )
                                    )
              Defendant.            )
_____)

        Plaintiff filed a Complaint on October 7, 2011, seeking review of
the denial by the Social Security Commissioner ("Commissioner") of
plaintiff's application for a period of disability and disability
insurance benefits ("DIB").  On February 2, 2012, the parties consented,
pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United
States Magistrate Judge.  The parties filed a Joint Stipulation on
August 29, 2012, in which:  plaintiff seeks an order reversing the
Commissioner's decision and awarding benefits or, alternatively,

_____
        [1]   Carolyn W. Colvin became the Acting Commissioner of the Social
Security Administration on February 14, 2013, and is substituted in
place of former Commissioner Michael J. Astrue as the defendant in this
action.  (*See* Fed. R. Civ. P. 25(d).)

remanding for further administrative proceedings; and the Commissioner requests that his decision be affirmed or, alternatively, remanded for further administrative proceedings.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On May 7, 2008, plaintiff protectively filed an application for a period of disability and DIB alleging an inability to work since July 1, 2007, because she "cannot move hands due to pain, [and] cannot walk for long periods of time." (Administrative Record ("A.R.") 26, 212.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 112-16, 119-23), plaintiff requested a hearing (A.R. 40-41). On December 22, 2009, plaintiff, who was represented by an attorney, appeared and testified at a hearing before Administrative Law Judge Charles E. Stevenson (the "ALJ"). (A.R. 49-66.) Vocational expert Alan Boroskin ("VE") also testified. (*Id.*) On March 5, 2010, the ALJ denied plaintiff's claim noting that a "hearing decision dated June 26, 2007 found that [plaintiff] retained the residual functional capacity to perform a broad range of light work and was not disabled," and plaintiff "has not presented any new or material evidence warranting a change in her residual functional capacity." (A.R. 26.) As a result, the "presumption of continuing non-disability applies and the June 26, 2007 decision is *res judicata* as to the period through that date." (A.R. 20-22, 26-37.)

The Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision. (A.R. 15.) That decision is now at issue

2

in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through June 30, 2011, and that she had not engaged in substantial gainful activity from her alleged onset date of July 1, 2007, through the date of the decision. (A.R. 28, 33.) The ALJ further determined that plaintiff has the severe impairments of: "cervicalgia, bilateral shoulder impingement, bilateral forearm and wrist tendonitis, possible left Guyon's, chronic lumbar strain, bilateral chondromalacia patellae, possible autoimmune disorder, and a mood disorder." (A.R. 28-29; internal citation omitted.) The ALJ concluded that none of these impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the Listing of Impairments. (A.R. 29.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently[,] stand and/or walk 6 hours in an 8-hour workday with frequent to occasional overhead reaching, no kneeling, crouching, climbing, running or jumping, no constant "very fine" manipulations and no restriction on handling or the usual type of fingering as opposed to "very fine" fingering.

3

(A.R. 30.)

The ALJ found that plaintiff was capable of performing her past relevant work ("PRW") as a "hand packager as [she] performed it" and "cleaner/polisher as generally performed." (A.R. 32-33.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2007, through the date of his decision. (A.R. 33.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

4

<u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).   "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.   <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).   However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.   The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(quoting <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following six issues:  (1) whether the ALJ properly determined that plaintiff's impairments had not changed since the prior June 27, 2007 decision; (2) whether the ALJ properly considered the opinion of treating physician Gilbert Varela, M.D.; (3) whether the ALJ properly considered plaintiff's subjective complaints; (4) whether the ALJ properly determined plaintiff's RFC; (5) whether the ALJ properly determined that plaintiff could perform her PRW; and (6) whether the ALJ constructively reopened plaintiff's previous

5

application.   (Joint Stipulation ("Joint Stip.") at 2-3.)

**I.    The Previous Decision By ALJ Zirlin Created A Presumption Of Nondisability, Which Plaintiff Failed To Rebut.**

Plaintiff contends that the ALJ erred in relying on the opinions of treating physicians Richard I. Woods, M.D. and Max H. Matos, M.D. in finding that she failed to prove "changed circumstances" to rebut the presumption of continuing non-disability.   (Joint Stip. at 9-16.)

Although applied less rigidly to administrative than to judicial proceedings, principles of res judicata nevertheless apply to administrative decisions.  *See* <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1995); <u>Chavez v. Bowen</u>, 844 F.2d 691, 693 (9th Cir. 1988); <u>Lyle v. Sec'y of Health and Hum. Servs.</u>, 700 F.2d 566, 568 (9th Cir. 1983).  A final determination that a claimant is not disabled creates a presumption that the claimant retains the ability to work after the date of the prior administrative decision.  *See* <u>Schneider v. Comm'r of Soc. Sec. Admin.</u>, 223 F.3d 968, 973 (9th Cir. 2000); <u>Lyle</u>, 700 F.2d at 568. This presumption of continuing non-disability may be overcome by a showing of "changed circumstances."  *See* <u>Lester</u>, 81 F.3d at 827; <u>Chavez</u>, 844 F.2d at 693.

If a claimant does not meet her burden to adduce "proof of change" in her medical condition or other "changed circumstances," such as a new medically-determinable impairment, an increase in the severity of an existing impairment, or a change in her age category, the Commissioner is not obliged to make a *de novo* determination of non-disability, even

6

when the burden of establishing disability otherwise would fall to the Commissioner. *See* Booz v. Sec'y of Health and Hum. Servs., 734 F.2d 1378, 1379-80 (9th Cir. 1984)(holding that the burden to prove disability remained with the claimant and did not shift to the Commissioner at step five, as it normally does, because the unappealed denial of the claimant's earlier application created a presumption of non-disability that must be overcome by the claimant's showing of changed circumstances, and where the ALJ permissibly concluded the claimant had produced no reliable medical evidence that he was disabled, the claimant had not met that burden); Lyle, 700 F.2d at 568-69 (holding that when the second administrative law judge properly determined the claimant had presented no evidence of changed circumstances to overcome the presumption that his ability to do light work persisted, the "absence of proof of change" was enough to meet the Secretary's burden to show the claimant could perform alternative work; the Secretary was not required "again [to] meet his burden de novo").

    Plaintiff had a previous hearing before Administrative Law Judge Peggy M. Zirlin ("ALJ Zirlin") on the same claims of disability as those addressed in the ALJ's decision now before this Court for review. (*See* A.R. 71-87.) In her June 26, 2007 decision, ALJ Zirlin issued a partially favorable decision, finding plaintiff disabled from April 26, 2004, to February 23, 2006, and not disabled from February 24, 2006, through the date of her decision due to medical improvement in her mental impairment.[2] (A.R. 83-86.) Relying on a November 13, 2006 Agreed

---

[2]    ALJ Zirlin noted in her decision that plaintiff had "admitted to the psychiatric consultative examiner on February 24, 2006 that her medications help her mood." (A.R. 78.) Accordingly, plaintiff "had medical improvement in her mental impairment and, by February 24, 2006,

Medical Examination ("AME") report by Richard I. Woods, M.D. (a former worker's compensation treating physician), ALJ Zirlin found that beginning on February 24, 2006, plaintiff had the RFC to perform "light work with frequent-to-occasional overhead reaching, no kneeling, crouching, climbing, running or jumping, no constant 'very fine' manipulations and no restriction on handling or the usual type of fingering as opposed to 'very fine' fingering." (A.R. 74-75, 84.) ALJ Zirlin then determined that plaintiff was capable of performing her PRW as a hand packager and cleaner/polisher. (A.R. 86.) Plaintiff did not seek judicial review of the 2007 decision. Accordingly, ALJ Zirlin's decision became the final decision of the Commissioner and created a rebuttable presumption of continuing non-disability.

As an initial matter, plaintiff does not present any evidence of changed circumstances, but rather offers reasons as to why the ALJ should not have relied on the opinions of Dr. Woods and Dr. Max H. Matos in finding that plaintiff's disability and impairments were unchanged after ALJ Zirlin's 2007 decision. Further, the ALJ's determination of unchanged circumstances since the June 2007 decision is supported by substantial evidence. (A.R. 26.) In support of his contention, the ALJ cites Dr. Woods' follow-up reports of March 13, 2007, and April 15, 2008, which "reported no change in [plaintiff's] condition." (A.R. 308-312, 402.) Indeed, in his April 2008 report, Dr. Woods noted that, based on "[plaintiff's] statement history, the physical examination, the radiographic evidence, review of medical records, and [his] professional

---

she regained the ability to understand, remember and carry out simple instructions, respond appropriately to supervisors, co-workers and the public, deal with changes in a routine work setting and use her judgment, on a regular and continuing basis." (*Id.*)

experience as a board certified orthopedic surgeon," "[a]s to [plaintiff's] impairment and factors of disability, I would refer the parties to my November 13, 2006, orthopedic Agreed Medical Examination report, as well as my supplemental report of March 13, 2007 . . . ." (A.R. 402.)

Additionally, on July 17, 2007, based on his physical evaluation of plaintiff, another former worker's compensation treating physician, Dr. Matos, reported that "there had been no change in [plaintiff's] condition since the November 13, 2006 Agreed Medical Examiner (AME) report by Dr. Woods, and he did not anticipate significant change in the pattern of her symptoms." (*See* A.R. 31, 286; internal citation omitted.) Dr. Matos continued to treat plaintiff through April 2008; his treatment notes through that time do not reflect any significant change in plaintiff's status since Dr. Woods' 2006 report. (A.R. 31, 300, 410, 420.) Thus, the ALJ's decision to accept the factual findings underlying ALJ Zirlin's 2007 decision was supported by substantial evidence.

To the extent plaintiff argues that the ALJ erroneously relied on Dr. Woods' and Matos' opinions, because they were rendered in the context of workers' compensation proceedings, her claim is unavailing. (Joint Stip. at 13-14.) An ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)(citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984)(holding that by failing to consider medical reports submitted

in state workers' compensation proceedings the ALJ failed to weigh all the evidence of record).

In sum, the ALJ's application of res judicata was supported by substantial evidence and free of legal error as plaintiff failed to establish changed circumstances sufficient to overcome the presumption of continuing nondisability.

**II.  The ALJ Gave A Specific And Legitimate Reason For Rejecting The Opinion Of Treating Physician Gilbert Varela, M.D.**

It is the responsibility of the ALJ to analyze evidence and resolve conflicts in medical testimony.  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to observe the claimant.  Magallanes, 881 F.2d at 751.  When a treating physician's opinion is not contradicted by another physician, it may be rejected only based upon "clear and convincing" reasons.  Lester, 81 F.3d at 830.  When contradicted by another doctor, a treating physician's opinion may only be rejected if the ALJ provides "specific

and legitimate" reasons supported by substantial evidence in the record. *Id*. It is well established that when a treating physician's opinion is contradicted, the ALJ must assess its persuasiveness in view of specified factors, including the "length of the treatment relationship and the frequency of examination"; the "nature and extent of the treatment relationship"; and the consistency of the treating physician's opinion "with the record as a whole."  Orn, 495 F.3d at 631.

Gilbert Valera, M.D. treated plaintiff from September 2008, through November 2009.  On September 3, 2008, Dr. Valera diagnosed plaintiff with cervical, lumbosacral, left shoulder, right wrist, and bilateral knee sprain and strain, as well as insomnia secondary to pain syndrome. (A.R. 31, 535.)  Dr. Valera restricted plaintiff to:  (1) no carrying or repeated lifting greater than ten pounds; (2) no single lifting greater than ten pounds; (3) no lifting above waist, shoulder, and head level; (4) no bending, stooping, crouching, squatting, twisting, pushing, pulling, climbing, or crawling; (5) no prolonged walking or standing; (6) no fingering, handling, or grasping; (7) no bending head downward; (8) no working greater than four hours per day; and (9) a ten minute break every two hours.  (A.R. 535-36.)  On June 29, 2009, Dr. Valera opined that plaintiff:  should not pivot, climb, bend, stoop, kneel, squat, jump, or run; should not stand or walk for a prolonged time; and should avoid inclined surfaces.  (A.R. 524.)

In completing an October 20, 2009 "Multiple Impairment Questionnaire," Dr. Valera noted that he had been treating plaintiff every four weeks since September 9, 2008.  (A.R. 539.)  Dr. Valera opined that plaintiff:  can sit for one hour in an eight-hour day and

stand/walk less than an hour in an eight-hour workday; can occasionally lift up to ten pounds and carry up to twenty pounds; has marked limitations in grasping, turning, and twisting objects, as well as using her fingers/hands for fine manipulations and using her arms for reaching; experiences pain, fatigue, or other symptoms that would constantly interfere with her attention and concentration; and is likely to be absent from work more than three times a month due to her impairments or treatment. (A.R. 541-45.) Dr. Valera also opined that other limitations would affect plaintiff's ability to work at a regular job on a sustained basis, including her: psychological limitations; need to avoid fumes, temperature extremes, and dust; and preclusion from pushing, pulling, kneeling, bending, and stooping. (*Id*.) He opined that plaintiff could not sustain a full-time competitive job. (A.R. 544.)

The ALJ gave Dr. Valera's opinion "little weight," because: (1) Dr. Valera relied entirely on plaintiff's subjective complaints; (2) his opinion was conclusory and not supported by objective findings; and (3) his opinion was inconsistent with other medical evidence of record, including the opinions of Dr. Woods, Dr. Matos, and Dr. Gonzalez. (A.R. 32.)

The ALJ's first ground is not a legitimate reason. An ALJ is free to reject a treating physician's opinion if it is based on a plaintiff's self-reporting, which as discussed below, the ALJ properly found to be not credible. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)(holding that physician's opinion may be disregarded if it is based on subjective complaints that have already been discredited). However, contrary to

the ALJ's contention, as discussed below, Dr. Varela's opinion was not based "solely on [plaintiff's] subjective complaints." (A.R. 32.)

The ALJ's second reason for rejecting Dr. Varela's opinion is also not legitimate.   The ALJ rejected Dr. Valera's findings, because his opinion was conclusory as he "did no examinations, laboratory tests, radiologic studies, or any other objective processes to support the drastic limitations he imposed." (A.R. 32.) An ALJ may discredit a treating physician's opinion if it is conclusory, brief, and unsupported by the record as a whole or by objective medical findings. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). However, Dr. Varela's September 3, 2008 report indicates a review of plaintiff's past medical record, including: x-rays; family and social history; physical examination; and diagnoses and assessment of plaintiff's disability status. (A.R. 525-37.)   Further, each of Dr. Varela's 2009 progress notes reflects that his findings were based not only on plaintiff's subjective complaints but also on objective findings and diagnoses. (A.R. 549, 551-54.)

Although the ALJ's first two reasons for rejecting Dr. Varela's opinion were improper, the ALJ's third reason was specific, legitimate, and supported by substantial evidence.   The ALJ rejected Dr. Varela's opinion, because there was "nothing in the record to explain the great difference in [plaintiff's] abilities as described by Drs. Matos and Woods, and indeed, even Dr. Gonzalez, and those reported by Dr. Varela." (A.R. 32.) As discussed above, the ALJ properly gave substantial weight to the opinions of treating physicians Matos and Woods. (A.R. 31.) Further, on June 14, 2008, consultative orthopedist Dr. Carlos Gonzalez,

13

M.D. reported that plaintiff's "physical evaluation was entirely within normal limits" and she had "no restrictions in any functional area."[3] (A.R. 31, 497-501.)   Three state agency medical consultants also assessed plaintiff with a light RFC.  (A.R. 32; 502-22); *see* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); *see also* <u>Andrews</u>, 53 F.3d at 1041 (noting that "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").  Thus, the opinions of Dr. Gonzalez and state agency physicians were also inconsistent with the extreme limitations reported by Dr. Varela.

The ALJ appropriately considered all the medical evidence and ultimately gave greatest weight to the findings of Drs. Woods and Matos. It is up to the ALJ to resolve conflicts and ambiguities in the medical evidence. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041-42 (9th Cir. 2008); <u>Andrews</u>, 53 F.3d at 1039-40.  Because the ALJ's rejection of Dr. Varela was supported by at least one specific and legitimate reason, and is based upon substantial evidence, the ALJ's conclusion as to the weight to be afforded to the opinion is legally sufficient.

///

///

///

---

[3]    The ALJ gave "little" weight to Dr. Gonzalez's opinion, because it was "contradicted by the reliable treatment history . . . ." (A.R. 31.)

14

**III.  The ALJ Set Forth Clear And Convincing Reasons For Finding Plaintiff's Testimony Regarding Her Subjective Symptoms And Pain To Be Not Credible.**

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated).  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  Robbins, 466 F.3d at 883.  The factors to be considered in weighing a claimant's credibility include:  (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

During the December 22, 2009 hearing, plaintiff testified that her "[p]ain in both knees, the hands, the shoulders, the neck, [and] the low back" would interfere with her ability to work.  (A.R. 54.)  Plaintiff stated she has troubling lifting and getting dressed.  (*Id.*)  As a

15

result of pain in both her hands, particularly her right hand, she needs help buttoning her pants and/or shirt.  (A.R. 54-55.)  She testified that she could walk about three blocks, stand and sit for about one-half-hour, but she is uncomfortable the whole time.  (A.R. 56.)  Plaintiff also testified that cleaning, doing dishes, cooking, taking a bath, brushing her teeth, carrying, pushing, pulling, or holding a pen makes her pain worse.  (A.R. 56-57.)  She goes to the laundromat and goes grocery shopping, but she is always accompanied.  (A.R. 59.)

Here, the ALJ found that "[a]fter careful consideration of the evidence . . . [plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (A.R. 31.)  Because the ALJ cited no evidence of malingering, the ALJ was required to provide clear and convincing reasons for rejecting plaintiff's subjective allegations of pain and functional limitations.

Contrary to plaintiff's contention, the ALJ's reasons for rejecting plaintiff's testimony are clear and convincing.  First, the ALJ noted that plaintiff's medical records showed "no significant change in [plaintiff]'s condition since [ALJ Zirlin's] June 26, 2007 decision, despite [plaintiff]'s testimony that all of her symptoms have worsened."  (A.R. 31.)  Indeed, as discussed above, Dr. Matos specifically noted that he did not anticipate a "significant change in the pattern of [plaintiff's] symptoms," because there had been no change in plaintiff's condition since November 2006, when Dr. Woods issued his AME report upon which ALJ Zirlin relied in finding plaintiff capable of performing light work with limitations.  (A.R. 286.)  In fact, Dr. Woods also opined that plaintiff's condition had remained unchanged since his examination of

16

her in November 2006.  (A.R. 402.)  Indisputably, the ALJ may use "ordinary techniques" in addressing credibility, Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence," Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996).  Further, the ALJ may consider the lack of objective evidence to support plaintiff's allegations of worsening symptoms.  See, e.g., Burch, 400 F.3d at 681 (noting that "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis").

Next, although plaintiff's daily activities (e.g., cooking, cleaning, washing dishes, and laundry) were not extensive, they went beyond what would be expected of an individual who, like plaintiff, claimed to be in so much pain as to have trouble holding a pen or buttoning her shirt or pants.  See Light, 119 F.3d at 793 (stating that an ALJ may disbelieve a claimant if there are inconsistencies between the claimant's testimony about his daily activities and his testimony about the nature, effect, or severity of his symptoms); Fair, 885 F.2d at 603 (noting that "if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working").

Accordingly, because the ALJ provided clear and convincing reasons for finding plaintiff's testimony to be not credible, no reversible error was committed.

17

### IV.   **The ALJ Did Not Err In Assessing Plaintiff's RFC**.

Plaintiff contends that the ALJ erred by failing to take into account in the RFC determination the mental limitations assessed by psychiatrist Ernest Bagner III.  (Joint Stip. at 39-43.)

Dr. Bagner examined plaintiff at the Agency's request on June 13, 2008.  (A.R. 493-96.)  He diagnosed her with depressive disorder, not otherwise specified, and assigned a Global Assessment of Functioning ("GAF") score of 73.[4]  (A.R. 495.)  He noted that at the time, plaintiff was not receiving any psychiatric treatment, but if she did, she would be significantly better in less than six months.  (A.R. 495-96.)  Dr. Bagner concluded that plaintiff would have no limitations interacting with supervisors, peers, or the public; zero to mild limitations completing simple tasks and maintaining concentration and attention; mild limitations completing complex tasks and completing a normal work week without interruption; and mild to moderate limitations handling normal stresses at work.  (A.R. 496.)

On June 27, 2008, state agency reviewing psychiatrist P.M. Balson, M.D. reviewed the medical record and completed a Psychiatric Review Technique Form.  (A.R. 502-15.)  Based on the fact that there was "no

---

[4]   The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR, 34 (rev. 4th ed. 2000).  A GAF score of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (*e.g.*, difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (*e.g.*, temporarily falling behind in schoolwork)."  *Id.*

psych [history] source" and Dr. Bagner's findings of "depressive d/o," and that plaintiff can sustain simple, repetitive tasks and perform full activities of daily living, Dr. Balson adopted ALJ Zirlin's 2007 RFC determination. (A.R. 502-15.)

Contrary to plaintiff's contention, the ALJ did not commit reversible error by failing to consider plaintiff's depression and anxiety. Rather, the ALJ specifically found that plaintiff suffered a severe impairment of mood disorder but still determined that plaintiff had the RFC to do light work. (A.R. 29-30.)

Further, the ALJ specifically recognized Dr. Bagner's finding of "mild to moderate limitations handling normal stresses at work." (A.R. 32.) Indeed, the ALJ's RFC assessment largely reflects Dr. Bagner's opinion, as his opinion includes no significant functional limitations imposed by plaintiff's depression. (A.R. 512.) As noted by the ALJ, Dr. Bagner assessed plaintiff with a GAF score of 73, "indicating mild, if any, limitations in vocational or social functioning." (A.R. 32, 495; internal citation omitted); Batson, 359 F.3d at 1193 (when evidence supports more than one rational interpretation, courts defer to the Commissioner's decision). Accordingly, the ALJ committed no reversible error.

**V.   The ALJ Properly Determined That Plaintiff Could Perform Her Past Relevant Work.**

At step four, a plaintiff has the burden of showing that she could no longer perform her PRW. Pinto v. Massanari, 249 F.3d 840, 844 (9th

19

Cir. 2001).  Nonetheless, the ALJ has the duty "to make the requisite factual findings to support his conclusion." *Id.*  This duty requires an ALJ to examine plaintiff's "'residual functional capacity and the physical and mental demands' of [plaintiff's] past relevant work." *Id.* at 844-45 (citations omitted).

At the hearing, the ALJ asked the VE if, based on plaintiff's RFC, she could perform any past work, to which the VE responded "[i]t would allow for her past work as a cleaner/polisher and video packager." (A.R. 63.)  The ALJ disregarded the video packager job as it was "too old at this point," and noted that the cleaner/polisher job was still relevant as it was well within 15 years.  (*Id.*)  In his decision, the ALJ still found that plaintiff could perform her PRW as a "hand packager" (DOT 920.587-018) as she performed it, as well as her PRW as a cleaner/polisher (DOT 709.687-010) as performed in the national economy. A.R. 32-33.)

Pursuant to Social Security Ruling ("SSR") 82-62, work that was performed 15 years or more prior to the time of adjudication of the claim (or 15 years or more prior to the date the title II disability insured status requirement was last met, if earlier) typically will not be considered "[u]nless continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations."  As noted above, at the hearing the ALJ disregarded plaintiff's PRW as a video packager because it was "too old," yet the ALJ did not make any findings in his decision that the job was held more than 15 years prior to the administrative hearing on plaintiff's claims or articulate that there was a continuity of skills, knowledge, and

20

processes between her jobs.  Thus, with respect to plaintiff's PRW as a "hand packager," there is insufficient information to permit the court to gauge whether the finding is well supported.  *See* Lewin v. Schweiker, 654 F.2d 631, 634–35 (9th Cir. 1981)(noting that an ALJ must make full and detailed findings of fact which are essential to the ALJ's conclusion so that a reviewing court may determine the basis for the decision and whether substantial evidence supports the Commissioner's decision).

In any event, assuming that the ALJ erred, any error is harmless as the ALJ also found that plaintiff could also perform her PRW as a cleaner/polisher as it is performed in the national economy.  (A.R. 33); Tommasetti, 533 F.3d at 1038 (noting that "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination")(quotation marks and citations omitted). Plaintiff asserts that this finding was error as there was "absolutely no evidence" in the record that she performed PRW as a cleaner/polisher and that the ALJ erroneously relied on the previous VE's testimony. (Joint Stip. at 50.)

However, the ALJ found that the circumstances had not materially changed since the date of the prior decision, thus the ALJ was required to adopt the earlier administrative finding as to the plaintiff's work experience absent "new and material evidence relating to" that finding. *See* Ellison v. Astrue, 2008 WL 4425764, at *3 (C.D. Cal. 2008)(finding that plaintiff did not rebut the presumption of continuing nondisability where plaintiff presented no facts of changed circumstances and,

instead, simply attacked the ALJ's finding that plaintiff could perform the jobs of sales clerk and account clerk); *see also* Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997).   Plaintiff has not identified any new and material evidence supporting her argument despite knowing that the VE based his opinion, in part, on the fact that plaintiff's PRW consisted of a cleaner/polisher.   Accordingly, the ALJ was bound by the earlier determination on the issue of "plaintiff's past relevant work."[5]

### VI.   **The ALJ Did Not *De Facto* Reopen Plaintiff's Earlier Application**.

Plaintiff contends that the ALJ *de facto* reopened her earlier application when he "relied upon" Dr. Woods' 2006 and 2007 reports in denying her claims.   (Joint Stip. at 55-56.)   The Ninth Circuit has found that an ALJ who reconsiders a prior application on its merits may constructively or "de facto" reopen the application.   <u>Lewis v. Apfel</u>, 236 F.3d 503, 510 (9th Cir. 2001).   The Court has not found any Ninth Circuit ruling that addresses whether an ALJ can *de facto* reopen a prior application by merely considering evidence from the time period relevant to that application.   Several other circuits, however, have held that the consideration of such evidence, on its own, is insufficient to cause a *de facto* reopening of a decision.   *See* <u>King v. Chater</u>, 90 F.3d 323, 325 (8th Cir. 1996); <u>Frustaglia v. Sec'y of Health and Hum. Servs.</u>, 829

---

[5]      The Court notes that while the ALJ adopted the earlier finding that "hand packager" and "cleaner/polisher" were "past relevant work," he made an independent determination as to whether plaintiff could perform those positions in view of her residual functional capacity. (A.R. 31-32.)

F.2d 192, 193 (1st Cir. 1987); <u>McGowen v. Harris</u>, 666 F.2d 60, 67-68 (4th Cir. 1981).

Here, the ALJ's considered Dr. Woods' 2006 and 2007 reports to determine plaintiff's disability during the relevant time period alleged in her second application for disability. (A.R. 31.) As discussed above, in Dr. Woods' April 2008 report, which was the only report he issued during the relevant time period in the instant case, he specifically notes that his findings as to plaintiff's impairments and disability factors had not changed since his November 2006 examining of plaintiff and, thus, refers the parties to both his November 2006 and supplemental March 2007 reports. (A.R. 402.) Further, Dr. Matos, also specifically adopts Dr. Woods' 2006 assessment of plaintiff's ability to work for the relevant time period. (A.R. 286, 300, 410, 420.) Accordingly, the ALJ was required to look at Dr. Woods' 2006 and 2007 reports, because both Dr. Woods and Dr. Matos specifically reference them in their functional assessment of plaintiff for the relevant time period. The ALJ reviewed the medical evidence prior to June 27, 2007, as cumulative medical history and not for the purpose of considering plaintiff's earlier application on the merits. Therefore, the ALJ did not *de facto* or constructively reopen plaintiff's first application.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that neither reversal of the Commissioner's decision nor remand is warranted. Accordingly, IT IS ORDERED that the Commissioner's decision denying benefits is AFFIRMED, and that Judgment shall be entered affirming the

decision of the Commissioner.

    IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

    LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   July 1, 2013

                                    _Margaret A. Nagle_
                           _____
                                    MARGARET A. NAGLE
                           UNITED STATES MAGISTRATE JUDGE

24